**In re Glenn C. CORKE, Debtor.**

No. 94–4055–DES.

Bankruptcy No. 92–41333–13.

United States District Court,
D. Kansas.

March 9, 1995.

Eric Kjorlie, Topeka, KS, for Jo Ann Corke.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for Glenn C. Corke.

William H. Griffin, Trustee, Topeka, KS.

### MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

### I. INTRODUCTION

This matter is before the court on Jo Ann Corke's ("creditor") appeal from United States Bankruptcy Judge James Pusateri's final order denying on remand her motion to

set aside his finding that a disputed debt was a property settlement and not maintenance.

As an initial matter, it is necessary briefly to discuss the state of the record on appeal. Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8006 requires the appellant to file with the clerk a designation of the items to be included in the record on appeal. In pertinent part, Bankruptcy Rule 8006 provides as follows: "[t]he record on appeal shall include ... the notice of appeal, the judgment, order, or decree appealed from, and any opinion, findings of fact, and conclusions of law of the court." Although challenging the bankruptcy court's decision on remand, creditor does not designate the bankruptcy court's Memorandum of Decision (Bankr.Doc. 70) or Judgment on Decision (Bankr.Doc. 69), both of which were issued and entered April 1, 1994. Instead, she designates a portion of the transcript of the February 7, 1994, hearing, which she mistakenly identifies as being held April 1, 1994. No hearing was held April 1, 1994. On April 1, 1994, the bankruptcy court issued its decision and entered its judgment on the issue heard February 7, 1994. The question presented on appeal and the object appealed from are obvious: the court's decision on remand—that is, the decision filed and entered April 1, 1994. Indeed, the first sentence of creditor's brief provides as follows: "[t]his Court's appellate jurisdiction over the Bankruptcy Court's final order of 4/1/94 entitled 'Judgment on Decision' and supporting 'Memorandum of Decision' arises under 28 U.S.C.S. § 158(a)." Creditor's Brief (Doc. 9), filed June 27, 1994, at p. 1. The omission is an oversight. The record is easily corrected. In order to avoid further delaying resolution of the question presented, the court sua sponte supplements the record by adding the two items issued and entered April 1, 1994: the bankruptcy court's "Memorandum of Decision" (Bankr.Doc. 70) and "Judgment on Decision" (Bankr.Doc. 69).

The court has reviewed the parties' briefs, the record as supplemented, and the relevant law, and is now ready to rule.

## II. *BACKGROUND*

Glenn Corke ("debtor") filed bankruptcy under Chapter 13 June 26, 1992. On August 5, 1992, he submitted his proposed payment plan, which provided for the discharge of certain unsecured debts at the end of 36 months. In his schedules, he listed an unsecured debt to creditor, his ex-wife. He characterized the debt as a property settlement. On August 14, 1992, creditor objected to the plan arguing her debt was nondischargeable as spousal maintenance. The bankruptcy court heard creditor's objection August 25, 1992. The matter was continued and a pretrial conference set for September 23, 1992.

On August 27, 1992, the trustee moved to dismiss debtor's case. His motion was set for hearing September 29, 1992.

On September 23, 1992, the bankruptcy court conducted the pretrial conference on creditor's objection to confirmation. The minute sheet from the conference states that if the case was not dismissed September 29, 1992, (the date the trustee's motion was to be heard) the parties would present their arguments and evidence regarding creditor's objection at a hearing not to last more than two hours.

On September 29, 1992, the hearing on the trustee's motion to dismiss was continued to October 27, 1992.

On October 7, 1992, the bankruptcy court notified the parties that a "SPECIAL SET" hearing would be held November 19, 1992, on creditor's objection. The last line of the notice states as follows:

IF PARTIES ANTICIPATE THAT THE HEARING MAY EXTEND IN EXCESS OF 15 MINUTES, OR THAT AN EVIDENTIARY HEARING MAY BE REQUIRED, COUNSEL MUST SEEK A SPECIAL SETTING DATE FROM THE CLERK. SUCH A REQUEST MUST BE MADE IN WRITING AND MUST INDICATE THE ANTICIPATED LENGTH OF TIME NEEDED FOR HEARING.

On October 27, 1992, the bankruptcy court notified the parties that the hearing on the trustee's motion to dismiss had been continued to December 12, 1992. At some point after receiving this notice, creditor contacted her attorney, Mr. Eric Kjorlie, to inquire

whether the notice affected the November 19, 1992, hearing. Mr. Kjorlie asked her to find out for him. On November 10, 1992, creditor telephoned Mr. Kjorlie's office and Mr. Kjorlie's secretary recorded the following message:

Jo Ann Corke

Nov 19th

No Meeting

tx

M

Apparently, Mr. Kjorlie understood the message to mean the November 19, 1992, hearing had been canceled.

On November 17, 1992, the bankruptcy court denied the trustee's motion to dismiss.

On November 19, 1992, the bankruptcy court held the scheduled hearing on creditor's objection. Debtor and his attorney, Mr. Pantaleon Florez, were present; creditor and her attorney were not. The bankruptcy court telephoned Mr. Kjorlie's office only to discover Mr. Kjorlie had scheduled another hearing in a different county. The bankruptcy court then went ahead with the hearing in creditor's absence, took evidence, and announced its finding that debtor's unsecured obligation to creditor was a dischargeable property division.

On November 20, 1992, creditor moved to set aside default order. The bankruptcy court denied her motion December 4, 1992. On December 17, 1992, creditor moved to reconsider pursuant to "Rule 55 and 60(b)." She filed a notice of appeal from the December 4, 1992, denial December 18, 1992. On January 25, 1992, the bankruptcy court entered an order treating creditor's motion pursuant to "Rule 55 and 60(b)" as a motion pursuant to Bankruptcy Rule 9024 and denied the motion. Creditor filed a notice of appeal from the January 25, 1993, denial February 1, 1993. On May 27, 1993, United States District Judge Sam A. Crow consolidated creditor's appeals. On November 17, 1993, he issued an order remanding the case to the bankruptcy court with instructions to reevaluate creditor's excusable neglect argument in light of the United States Supreme Court's decision in *Pioneer Investment Services v. Brunswick Associates,* —— U.S. ——,

113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). On April 1, 1994, Judge Pusateri denied creditor's motion to reconsider after finding creditor had not established excusable neglect under *Pioneer Investment.* Creditor filed her notice of appeal April 8, 1994.

## III. *DISCUSSION*

Title 28 United States Code § 158(a) grants the court jurisdiction to hear appeals from final and, with leave, interlocutory orders, of the bankruptcy court. Creditor appeals from a final order. The court exercises jurisdiction pursuant to 28 U.S.C. § 158(a). The bankruptcy court's conclusions of law are reviewed de novo and its findings of fact under the clearly erroneous standard. *In re Schneider,* 864 F.2d 683, 685 (10th Cir.1988).

Creditor appeals from an order entered by the bankruptcy court following remand by Judge Crow. Judge Crow narrowly framed the issue on remand. The question presented is whether the bankruptcy court erroneously concluded that creditor failed to establish excusable neglect under the standards set forth in *Pioneer Investment?* Creditor argues as follows: (1) the bankruptcy court applied the wrong standard; (2) the bankruptcy court abused its discretion by finding that Mr. Kjorlie presented false information; (3) the order should be set aside because the October 7, 1992, notice was ambiguous; (4) the order should be set aside "pursuant to Federal Rules of Civil Procedure 60(b) and 55, as incorporated into Bankruptcy Rule 9024;" and (5) the bankruptcy court erred by finding she frustrated the administration of justice.

### A. *The Standard on Remand*

As a result of her failure to appear at the November 19, 1992, hearing, creditor has filed notices of appeal on the following three dates: (1) December 4, 1992; (2) January 25, 1993; and (3) April 8, 1994. The first two appeals were consolidated and addressed by Judge Crow in a Memorandum and Order issued November 17, 1993. In his November 17, Memorandum and Order, Judge Crow concluded that *Pioneer Investment* controlled the question presented on appeal and remanded with instructions that the bank-

ruptcy court determine whether creditor could establish excusable neglect in light of the standards set forth in *Pioneer Investment.* Creditor's third appeal is from the bankruptcy court's application of *Pioneer Investment* on remand. *Pioneer Investment* sets forth the applicable standard here.

■ *Pioneer Investment* discussed the meaning of "excusable neglect." [1] The word "neglect" "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Pioneer Investment,* —— U.S. at ——, 113 S.Ct. at 1494, 123 L.Ed.2d at 85. Whether an instance of neglect may be considered "excusable" is an equitable determination requiring a court to consider all of the relevant circumstances surrounding the omission. *Id.* at —— - ——, 113 S.Ct. at 1497–98, 123 L.Ed.2d at 89. These circumstances include the following: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on the judicial proceedings; and (3) the reason for the delay, including whether it was within the movant's control and whether the movant acted in good faith. *Id.* at —— - ——, 113 S.Ct. at 1497–99, 123 L.Ed.2d at 89–90. A client is responsible for her attorney's neglect. *Id.* at ——, 113 S.Ct. at 1499, 123 L.Ed.2d at 90.

Creditor's first argument is somewhat disjointed. Apparently, she contends as follows: first, that Judge Pusateri applied the wrong standard and, second, that certain unidentified factual findings to which he applied the standards are unsupported by the record. The court disagrees with both contentions.

In his April 1, 1994, Memorandum and Order, Judge Pusateri discussed the standards set forth in *Pioneer Investment.* More importantly, he faithfully applied those standard to his findings of fact. Creditor's argument that Judge Pusateri misread *Pioneer Investment* or applied the wrong law is without merit.

Judge Pusateri made 31 numbered findings of fact; however, not each of these findings was critical to his ultimate decision. After reviewing the entire record, the court is convinced the record supports those findings to which Judge Pusateri applied *Pioneer Investment.* Creditor's argument that Judge Pusateri applied *Pioneer Investment* to erroneous factual findings also is without merit.

Although the court concludes Judge Pusateri neither misread nor misapplied *Pioneer Investment,* some discussion is necessary. The theme of creditor's first argument is that the various events leading up to the November 19, 1992, hearing created so much confusion that equity requires the court to excuse her failure to appear. The following three events are the chief causes of the confusion to which creditor and her attorney point: (1) the "ambiguous" language of the October 7, 1992, notice; (2) the notice that the trustee's motion to dismiss had been continued to December 16, 1992; and (3) the conversation creditor had with an unidentified clerk regarding the affect of the continuance on creditor's November 19, 1992, hearing.

### 1. Ambiguous language

On September 23, 1992, the bankruptcy court held a pretrial conference at which the parties announced they were prepared to try creditor's objection and they could present their evidence and argument in under two hours. On October 7, 1992, the bankruptcy court sent the parties a notice informing them the matter had been scheduled for a "SPECIAL SET hearing" at 1:30 on November 19, 1994. The notice also provided that the parties should seek a special setting if the hearing would take more than 15 minutes. Creditor argues that the discrepancy in the length of the hearing caused confusion as to whether the hearing would be held as scheduled.

Creditor claims the October 7, 1992, notice contains "dramatic ambiguity" as to whether

---

1. The Supreme Court examined the meaning of "excusable neglect" within the context of Bankruptcy Rule 9006(b)(1). At issue here is the meaning of "excusable neglect" as imported from Federal Rule of Civil Procedure 60(b) by Bankruptcy Rule 9024. As previously noted, however, Judge Crow already has decided *Pio-*

*neer Investment* controls the question presented here. *Cf. City of Chanute, Kansas v. Williams Natural Gas Co.,* 31 F.3d 1041, 1044–47 (10th Cir.1994) (applying *Pioneer Investment* to William's claim of excusable neglect under Federal Rule of Appellate Procedure 4(a)(5)). His decision is law of the case.

the November 19 hearing remained on the schedule; however, it is clear from the record that creditor and Mr. Kjorlie continued to prepare for a full hearing even after receiving the October 7, 1992, notice. Their continued preparation for a full hearing directly contradicts their implied claim that the notice caused them to believe the hearing had been canceled or postponed. Furthermore, the October 7, 1992, notice in no way indicates the November 19, 1992, hearing was not to be held. In fact, it clearly informs the parties a hearing had been scheduled on November 19, 1992. Creditor emphasizes one difference between her prior understanding and the information imparted by the notice: the two hour hearing was noticed as a fifteen minute hearing. This difference is not a reasonable justification for her failure to appear. The court fully agrees with the bankruptcy court's statement that "uncertainty about the length of a hearing could justify only the failure to be prepared for a complete hearing, not the failure to appear at all." Memorandum of Decision (Bankr.Doc. 70), filed April 1, 1994, at p. 11. Creditor's argument regarding the October 7, 1992, notice is untenable.

### 2. *Continuance of the trustee's motion to dismiss*

The trustee moved to dismiss debtor's case August 27, 1992. On September 29, 1992, the motion was continued to October 27, 1992. On October 27, 1992, the motion was continued to December 16, 1992. At no time before November 19, 1992, was the case dismissed or the hearing of creditor's objection stayed pending resolution of the trustee's motion to dismiss. Nevertheless, creditor apparently became confused by the October 27 notice and telephoned Mr. Kjorlie to inquire about the affect of the continuance on her scheduled hearing. Instead of inquiring himself, or assigning one of his staff to the job, Mr. Kjorlie delegated the task to creditor. Creditor now argues the continuance placed the case in "dismissal status" which caused confusion as to whether the hearing would be held as scheduled.

Creditor's argument turns on her understanding of "dismissal status." According to

creditor, by postponing to early December its decision on the trustee's motion to dismiss, the bankruptcy court placed the case in procedural limbo thereby suspending the November 19 hearing. The court disagrees. Although creditor argues the October 27 continuance suspended resolution of her objection because the case would have been in "dismissal status" on November 19, the court notes that the case was not stayed when the trustee initially filed his motion to dismiss August 27, 1992. In fact, on September 23, 1992, the bankruptcy court held a pretrial conference at which creditor's objection was discussed even though the trustee's motion was pending. The court agrees that had the bankruptcy court granted the trustee's motion prior to November 19, 1992, creditor's objection would have been moot and the hearing unnecessary; however, the motion was not granted and the bankruptcy court gave no indication the hearing was postponed or canceled. In short, the bankruptcy court neither dismissed the case nor stayed the hearing of creditor's objection pending resolution of the trustee's motion to dismiss. Creditor's argument regarding the affect of "dismissal status" on the November 19 hearing is without merit.

### 3. *Conversation with the clerk*

After Mr. Kjorlie delegated to creditor the responsibility to ascertain how the continuance affected the November 19 hearing, creditor telephoned the clerk's office, either of this court or the bankruptcy court. On November 10, 1992, creditor then telephoned Mr. Kjorlie's office and his secretary took the following message: "Jo Ann Corke, Nov 19th, No Meeting, tx, M." Mr. Kjorlie understood this message to mean the November 19, 1992, hearing had been canceled; however, he neither verified the cancellation himself nor assigned anyone in his office to verify it. Creditor argues the information received from the clerk and conveyed by her to Mr. Kjorlie caused confusion as to whether the hearing would be held as scheduled.

In support of her argument, creditor provided two affidavits and testified at the February 7, 1994, hearing. Creditor's version of the events differed with each telling. In her

first affidavit she stated she was told by the bankruptcy clerk that the case had been dismissed and her hearing was canceled. In her second affidavit she stated either the bankruptcy clerk or the clerk of this court told her there would be no hearing if the case was in "dismissal status."[2] At the hearing, creditor admitted she did not know which clerk's office she called or with whom she spoke. She further admitted that the clerk with whom she spoke did not tell her the case had been dismissed or that the hearing had been canceled. (Tr. 54 & 56–57). Her testimony directly contradicted her first affidavit in which she stated she had been advised by a deputy clerk that "there would not be a Hearing on 11/19/92 because the case was dismissed and had not been reinstated." Motion to Set Aside (Bankr.Doc. 26), filed November 20, 1992, Ex. 1, at p. 2.

In regard to these contradictions, Judge Pusateri wrote as follows: "[i]n an effort to show their absence resulted from excusable neglect, Ms. Corke and Mr. Kjorlie submitted affidavits containing both false and misleading statements which they hoped the Court would accept as true." Memorandum of Decision (Bankr.Doc. 70), filed April 1, 1994, at pp. 8–9. The contradictions highlighted by the bankruptcy court are apparent. They are present on the face of the affidavits and are further developed by Judge Pusateri during his questioning of creditor at the hearing. Each time creditor told her story she became more equivocal; until, finally, she admitted the clerk never told her the case had been dismissed or her hearing canceled. Judge Pusateri's conclusions regarding the credibility of creditor's story are supported by the record; that is, based on a review of the record as a whole, Judge Pusateri did not err by concluding that false and misleading statements had

been submitted to create the impression of excusable neglect.

### 4. *The bankruptcy court's analysis*

In *Pioneer Investment,* the Supreme Court examined the meaning of "excusable neglect" and concluded that "the determination is at bottom an equitable one." *Pioneer Investment,* —— U.S. at ——, 113 S.Ct. at 1498, 123 L.Ed.2d at 89. In making the determination, all relevant factors are to be considered; not merely those few set forth by the Supreme Court. *See Id.* In its analysis, the bankruptcy court specifically examined the three factors mentioned in *Pioneer Investment.* It also focused on the following circumstances: (1) the claimed confusion was unjustified because no order issued postponing or canceling the hearing; (2) creditor's confusion easily could have been rectified by the slightest action by Mr. Kjorlie; (3) Mr. Kjorlie chose, instead, to make no inquiry on his own but delegate responsibility to creditor; (4) he then failed to verify the information provided by creditor even though it directly contradicted a notice from the bankruptcy court; and (5) he submitted false and misleading information in an effort to rectify the consequences of his oversight. After examining the three factors from *Pioneer Investment,* and reviewing the circumstances of the case, the bankruptcy court determined that the failure of creditor and her attorney to attend the hearing was not excusable. Based on a review of the record as a whole, the court concludes that the bankruptcy court's decision is well-grounded in the record and supported by the law. The bankruptcy court committed no reversible error.

### B. *False Information*

Creditor challenges findings of fact 17, 20, and 29. Because none are clearly erroneous, creditor's challenge is rejected.[3]

---

**2.** This is the first time "dismissal status" appears in the record. The message creditor left with Mr. Kjorlie's office does not mention "dismissal status." Nor does her first affidavit. It is noteworthy that Mr. Kjorlie also provided an affidavit, *signed on the same day as creditor's second affidavit,* in which he discusses the significance of the case being in "dismissal status." It is clear from the record Judge Pusateri was convinced "dismissal status" was merely an inven-

tion of Mr. Kjorlie's and not a term conveyed to creditor by the clerk. Judge Pusateri's conclusion is not clearly erroneous.

**3.** The only close question is with regard to finding 29; however, finding 29 is not critical to the bankruptcy court's analysis and its removal would not alter the soundness of the bankruptcy court's conclusion.

### C. *The October 7, 1992, Notice*

Creditor specifically argues the October 7, 1992, notice contained "dramatic ambiguity in not being prominently announced and accompanied by an explanation of its significance." The "dramatic ambiguity," if any, goes only to the length of the hearing. The notice does not indicate the bankruptcy court postponed or canceled the hearing. The court previously has addressed this objection; it is without merit.

### D. *Bankruptcy Rule 9024*

Creditor argues the record demonstrates the bankruptcy court erred by refusing to set aside the November 19, 1992, proceedings. Judge Crow previously presided over a consolidated appeal in this case. After considering the issues presented in the consolidated appeal, he identified the question presented as being whether creditor's conduct constituted excusable neglect. He then remanded for reconsideration of creditor's excusable neglect claim in light of *Pioneer Investment.* Apparently, creditor attempts to argue issues beyond the scope of the remand. Given the scope of the issue on remand, her argument under subheading four of the "Arguments and Authorities" heading of her brief can be read only as being identical to her first argument. In subsection one of this Memorandum and Order, the court already has addressed and rejected this argument.

### E. *Frustration of the Administration of Justice*

Creditor argues she has not frustrated the administration of justice; therefore, under *Pioneer Investment,* the bankruptcy court could not conclude she failed to establish excusable neglect. Submitting false and misleading statements is more than adequate to frustrate the administration of justice. Creditor's argument is rejected.

### IV. *CONCLUSION*

Creditor has identified no error requiring reversal.

**IT IS BY THE COURT THEREFORE ORDERED** that the bankruptcy court's decision is affirmed.